# In the United States Court of Federal Claims

No. 25-444L
Filed: September 17, 2025
NOT FOR PUBLICATION

| |
|---|
| **MICHAEL W. CORBETT, et al.,** |
| *Plaintiffs*, |
| v. |
| **UNITED STATES,** |
| *Defendant*. |

*Clark S. Wood*, Sallisaw, OK, for the plaintiffs.

*Kyle Lyons-Burke*, Environment and Natural Resources Division, U.S. Department of Justice, Washington, DC, for the defendant.

**MEMORANDUM OPINION**

**HERTLING**, Judge

    The plaintiffs, Michael and Katy Corbett, are residents of and property owners in Mayes County, Oklahoma. In 2018, the plaintiffs purchased approximately 10 acres of land that sit at the east end of West 590 Road. East of the plaintiffs' property is land owned by the U.S. Army Corps of Engineers (the "Corps"). This federal land is a portion of the Corps-owned property surrounding Ft. Gibson Dam and the resulting Ft. Gibson Lake.

    After purchasing the property in January 2018, the plaintiffs began erecting a fence to enclose their property. The fence blocked an access path that continued from West 590 Road through the plaintiffs' property along its northern boundary. The Corps uses this access path to get from West 590 Road to its Ft. Gibson Lake property. In June 2018, the Corps sent the plaintiffs a cease-and-desist letter explaining that the path along the plaintiffs' northern boundary is the sole means by which the Corps has access to its land east of the plaintiffs' property. The Corps advised the plaintiffs that they were not legally allowed to block the path with their fence. In the letter, the Corps informed the plaintiffs that it was prepared to pursue all available legal means to ensure the path from West 590 Road across the plaintiffs' property to the Ft. Gibson Lake property remained open to the Corps and the public. The plaintiffs reviewed the letter with their representative County Commissioner and then, without responding to the Corps, completed erecting the fence around their property. In March 2019, the Corps tore down the plaintiffs' fence and removed from the plaintiffs' property an abandoned pickup truck and trailer and the brush surrounding them at the entrance to the access path from West 590 Road. After removing the fence, the Corps allegedly began sending letters to members of the public, authorizing them

1

to use the Corps' right-of-way across the plaintiffs' property to access the Ft. Gibson Lake property.

In March 2025, the plaintiffs brought this suit against the United States, acting through the Corps. Although not clearly elaborated, the complaint alleges that the Corps took the plaintiffs' property without just compensation, in violation of the fifth amendment. First, the plaintiffs alleged a taking in March 2019 by tearing down the plaintiffs' fence. The plaintiffs also intimated in their briefing that another taking occurred in 2020, when the Corps began authorizing members of the public to use the access path across the plaintiffs' property. The plaintiffs seek just compensation for the damages attributable to the taking and the diminution to the value of their property.

The defendant has moved to dismiss the complaint under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") for lack of subject-matter jurisdiction. The defendant argues that the plaintiffs lack standing and that the statute of limitations has expired on any takings claim concerning the Corps' use of the access path or the destruction of the plaintiffs' fence.

The plaintiffs have failed to demonstrate that they had a property interest at the time of the taking and therefore lack standing to challenge the taking. Further, any potential claims arising out of the Corps' use of the access path are barred by the six-year statute of limitations. Accordingly, the motion to dismiss is granted.

I.     **FACTUAL BACKGROUND**[1]

The eastern-most portion of West 590 Road leads up to and ends at the plaintiffs' property, which sits just south of the road.[2] (ECF 10-1 at ¶ 4.) From the spot where West 590

---

[1] The facts outlined here reflect the allegations of the complaint, the facts outlined in the declarations accompanying the motion to dismiss, and the facts supplied by the plaintiffs in their opposition to the motion. The plaintiffs' opposition to the motion does not challenge any of the facts supplied by the defendant's declarants in support of the motion to dismiss. These facts supplied by the defendant are therefore taken to be true, as are the facts outlined in the complaint and in the plaintiffs' declarations and accompanying exhibits. These materials may be relied on in resolving the motion to dismiss for lack of jurisdiction. *See Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015).

[2] The parties dispute where West 590 Road ends. The plaintiffs claim that a Mayes County Commissioner came to their property in 2018 and affirmed their position that West 590 Road ends "well west of the [plaintiffs'] property." (ECF 10-1 at ¶ 4.) In its June 2018 letter, the Corps noted that it had verified with Mayes County that the "road is maintained by the County up to the Corps Property boundary line." (Ex. 9, ECF 10-1.) The location of the end of West 590 Road is immaterial to resolving the issues presented by the motion to dismiss. The road leading up to the plaintiffs' property line is referred to as West 590 Road, and the road or path running through the plaintiffs' property along its northern boundary and used by the Corps to access its property is referred to as the access path or right-of-way.

Road meets the plaintiffs' property, a path runs through the plaintiffs' property along its northern boundary.  This path leads to federal property located on the eastern boundary of the plaintiffs' property.  This federal property is owned and managed by the Corps.  Further south, the federal property includes Ft. Gibson Dam and the lake it created, Ft. Gibson Lake.  The only feasible path by which Corps personnel and others can reach Corps property by foot or vehicle from West 590 Road is by using the access path across the plaintiffs' property. (ECF 6-1 at ¶ 5.)  Corps personnel have used the access path since at least 1991 to access the Ft. Gibson Lake property by foot or by all-terrain or 4x4 vehicle.  (*Id*. at ¶¶ 5, 7.)  Corps personnel park government vehicles at the head of the path when accessing the Ft. Gibson Lake property by foot (*Id*. at ¶ 8), but it is unclear whether this parking location is also on the plaintiffs' property.

In support of its motion to dismiss, the defendant has submitted two declarations from Corps personnel: one by Jeffrey Seward, a Corps park ranger, and a second by Michelle Horn, the tribal liaison and tribal program manager of the Corps' Tulsa District.[3]  Ranger Seward explains that he has served as a park ranger since 1991 and has used the access path across the plaintiffs' property to access the Ft. Gibson Lake property ever since he started working for the Corps.  (*Id*. at ¶ 6.)  The declarations explain that Corps personnel have been using the access path across the plaintiffs' property in two ways.  First, the Corps uses the right-of-way to access the Ft. Gibson Lake property three to four times a year to monitor archaeological sites and look for signs of unauthorized public use of the Ft. Gibson Lake property.  (*Id*. at ¶¶ 6, 10.)  Second, starting in 2005, Corps archaeologists have been holding cultural-resource-identification training classes for personnel of the Corps' Tulsa District on the Ft. Gibson Lake property and have used the access path to reach the Ft. Gibson Lake property.  (ECF 6-2 at ¶ 8.)  This training is held every couple of years, most recently in 2022.  (*Id*. at ¶ 16.)  The defendant's declarations are silent regarding use of the access path by members of the public.

At one point, a trailer and pickup truck were placed along the entrance to the access path on the plaintiffs' property to prevent trespassers from utilizing it. (ECF 10-1 at ¶¶ 3, 7.)  With respect to the trailer and pickup truck, plaintiff Katy Corbett avers that her neighbor to the north, Mr. Hendricks, told her that the "Corps [ ] asked him to put [them] there because [the Corps] wanted to stop people from trespassing on their land to the East." (*Id*. at ¶ 3.)[4]  Heavy brush and

---

[3] The defendant titled these declarations as affidavits, but while both declarations are provided under penalty of perjury, neither was sworn before a notary.  The same is true of the declaration submitted by plaintiff Katy Corbett.  These testimonial statements are therefore properly termed declarations and not affidavits.  *See "Affidavit"* Black's Law Dictionary (12th ed. 2024); *Westlaw* (defining "affidavit" as "a voluntary declaration of facts written down and sworn to by a declarant, before an officer authorized to administer oaths," and "declaration" as "a formal statement, proclamation, or announcement, especially one embodied in an instrument").

[4] The plaintiffs have not provided a declaration from Mr. Hendricks to this effect, only the hearsay from Katy Corbett.  The plaintiffs have provided photographs as exhibits to Katy Corbett's declaration.  (Ex. 5, 6, 7, ECF 10-1; Ex. 2, 3, 4, ECF 10-2.)  These photographs purport to show the trailer and pickup truck sitting along the north boundary line of their property athwart the entry to the access path in 2008, 2013, and 2017.  The defendant does not challenge the accuracy of the photographs or Ms. Corbett's assertion based on the statement from Mr. Hendricks.

trees surrounded the trailer and truck, which were placed just inside the north boundary of the plaintiffs' property. (*Id*. at ¶ 3.)

Neither party has provided a record of the ownership of the plaintiffs' property between 1991 and 1994. Between 1994 and 2018, Carolyn Jones owned the plaintiffs' property. (*Id*. at ¶ 10.) The plaintiffs acquired the property from Ms. Jones, an absentee owner, who spent most of her time at a different home. (*Id*.) Ms. Jones died in February 2023. (ECF 10-1 at ¶ 2.)

In January 2018, plaintiffs purchased the property. (ECF 1 at ¶ 6; ECF 10-1 at ¶ 2.) At the time of sale, Ms. Jones did not disclose to the plaintiffs that the government had a right-of-way through the property. (ECF 10-1 at ¶ 10.) In March 2018, the plaintiffs surrounded their property with a fence. (ECF 1 at ¶¶ 7, 9; ECF 10-1 at ¶ 5.) The fence blocked Corps personnel from reaching the access path. (Ex. 9, ECF 10-1.)

In June 2018, the Corps sent the plaintiffs a cease-and-desist letter to inform them that, by fencing their property, the plaintiffs were blocking the Corps' sole means of access to the Ft. Gibson Lake project. (*Id*.) The cease-and-desist letter also notified the plaintiffs that they have "no legal authority to block this road either from public access or from Corps access." (*Id*.) According to the Corps, West 590 Road "is maintained by the County up to the Corps Property boundary line." (*Id*.) The Corps informed the plaintiffs that it was "prepared to pursue available legal remedies to ensure this road remains open for both Corps access for project purposes and public access to the public hunting grounds." (*Id*.) The plaintiffs disregarded this letter and continued fencing in their property. (ECF 1 at ¶ 11.) On multiple occasions, the plaintiffs, with the help of local law enforcement officers, turned away trespassers attempting to enter their property using the access path to reach the Ft. Gibson Lake property. (ECF 10-1 at ¶ 5.)

In March 2019, the Corps entered the plaintiffs' property and removed the fencing blocking the access path as well as the trailer, the pickup truck, and the brush that had blocked public access to the path since 2007. (ECF 1 at ¶ 11; ECF 10-1 at ¶ 6.)

In 2020, the plaintiffs allege that the Corps began sending letters to members of the public who requested authorization to use the access path. The letters asserted that the public had a legal right to access the Corps' Ft. Gibson Lake property by using the access path through the plaintiffs' property and purported to authorize that use. (ECF 10-1 at ¶ 7.) The plaintiffs allege that hundreds of individuals received these letters. (ECF 1 at ¶ 13.) As a result, members of the public began crossing the plaintiffs' property at all hours of the day and night "render[ing] their property uninhabitable for their family to live on." (*Id*. at ¶ 15.)

## II.     PROCEDURAL HISTORY

The plaintiffs filed their complaint in this court on March 7, 2025, seeking damages of approximately two million dollars. (*Id*. at ¶ 21.) The plaintiffs allege that the United States, acting through the Corps, violated the takings clause of the fifth amendment of the U.S. Constitution in March of 2019 by tearing down the plaintiffs' fence and in October 2020 by giving other private citizens permission to use the access path. (*Id*. at ¶ 24.) The plaintiffs allege that by tearing down the plaintiffs' fence and granting the public permission to use the access path the Corps made the property "uninhabitable for its intended use as a quiet and enjoyable home for [the plaintiffs] to live and raise their family." (*Id*. at ¶¶ 11-13, 24.)

On July 7, 2025, the defendant moved to dismiss the complaint for lack of standing and timeliness.  (ECF 6.)  In its motion, the Corps argues that: (1) the plaintiffs were not the owners of the land at the time of the taking in 1991 and, thus, lack standing to bring such a complaint; (2) the six-year statute of limitations on the plaintiffs' claim expired, because the Corps executed its taking on the plaintiffs' land in 1991 and has continuously used its right-of-way since then, providing sufficient notice to the property owners; and (3) even if the Corps' continuous use of its right-of-way had not provided sufficient notice to the owners of the property, the plaintiffs received actual notice when the Corps sent the cease-and-desist letter in June 2018, more than six years before the plaintiffs filed this suit.  The defendant supported its motion with the Seward (ECF 6-1) and Horn (ECF 6-2) declarations, and exhibits attached to the Horn declaration.  The plaintiffs filed their response to the motion to dismiss on August 21, 2025.  (ECF 10.)  The plaintiffs provided a declaration by plaintiff Katy Corbett (ECF 10-1) and attached exhibits as well as a declaration by plaintiff Matthew Corbett's mother Tammy (or Tammie, as it appears with both spellings in the document) (ECF 10-2) and attached exhibits.  The defendant replied on September 4, 2025.  (ECF 11.)[5]

### III.     JURISDICTION AND STANDARD OF REVIEW

The Tucker Act, 28 U.S.C. § 1491(a)(1), gives the Court of Federal Claims jurisdiction over claims for damages against the United States:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

The Court of Federal Claims has jurisdiction over claims brought against the United States under the takings clause of the fifth amendment.  *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1309 (Fed. Cir. 2008) ("It is undisputed that the Takings Clause of the Fifth Amendment is a money-mandating source for purposes of Tucker Act jurisdiction.").

The takings clause of the fifth amendment provides that "private property [shall not] be taken for public use, without just compensation."  U.S. Const. Amend. V, cl. 5.  A taking does not require a formal seizure of land but can be brought about by restricting the owners' use of their land and reducing its value over time, such that a servitude has been acquired.  *See United States v. Dickinson*, 331 U.S. 745, 748-49 (1947).

Under the Tucker Act, a claim against the United States must be brought within six years from the date the claim accrued.  *See* 28 U.S.C. § 2501; *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 135-36 (2008).  In general, a claim accrues "when all the events have occurred that fix the alleged liability of the government and entitle the claimant to institute an

---

[5] The Court sought to hold oral argument by video conference, but counsel for the plaintiffs never replied to emails seeking to schedule the argument.  Accordingly, the motion is being resolved without oral argument.

action." *Ingrum v. United States*, 560 F.3d 1311, 1314 (Fed. Cir. 2009). In the context of a taking, a claim accrues when "the scope of what is taken is fixed . . . and the plaintiff knew or should have known of the acts that fixed the government's alleged liability." *Katzin v. United States*, 908 F.3d 1350, 1358 (Fed. Cir. 2018).

In determining whether a court lacks subject-matter jurisdiction pursuant to RCFC 12(b)(1), the "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). It is the plaintiff's burden to establish by a preponderance of the evidence that subject-matter jurisdiction exists. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). When a plaintiff's asserted jurisdictional facts are challenged, only those factual allegations that the defendant does not controvert are accepted as true. *Shoshone Indian Tribe of Wind River Rsrv., Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012). A court is not "'restricted to the face of the pleadings'" in resolving disputed jurisdictional facts and may review evidence outside the pleadings. *Id*. (quoting *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993), *cert. denied*, 512 U.S. 1235 (1994)).

## IV.    DISCUSSION

The defendant moves to dismiss. First, it argues that the plaintiffs lack standing to challenge the taking because the plaintiffs did not own the property when the Corps began using the right-of-way, by 1991 according to the record. Second, it argues that the claim is untimely because the Corps was using the right-of-way by 1991, and even if that date is overlooked, the plaintiffs were notified in 2018 of the Corps' use of the right-of-way and failed to sue within six years of that notification.

Ranger Seward's declaration reflects that the Corps was using the access path across the plaintiffs' property in 1991. The plaintiffs concede this fact, as they do not offer any evidence to contradict it in their opposition to the motion to dismiss. Because the original taking occurred no later than 1991, and the plaintiffs did not own the property until 2018, the plaintiffs lack standing. Further, any claims arising out of the Corps' use of the access path are untimely because the taking had occurred by 1991. Alternatively, even if the taking only occurred in 2018, the plaintiffs filed this suit in 2025, making it untimely. Either way, dismissal is warranted.

### A. Standing

For the plaintiffs to have standing, they must allege and ultimately prove an injury in fact, which is a harm that is concrete and actual or imminent. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In takings cases, the Federal Circuit has held that plaintiffs must show they had a valid property interest at the time of the taking to prove the concrete and actual injury in fact required for standing. *See Reoforce, Inc. v. United States*, 853 F.3d 1249, 1263 (Fed. Cir. 2017); *Cienega Gardens v. United States*, 331 F.3d 1319, 1329 (Fed. Cir. 2003); *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001).

The Corps argues, and the plaintiffs do not dispute, that the taking had occurred at least by 1991, if not earlier, when Ranger Seward attests that he used the access path to go from West

6

590 Road across the property now owned by the plaintiffs to get to the Corps' Ft. Gibson Lake property. The declarations by Ranger Seward and Ms. Horn demonstrate that the Corps has been using the access path across the plaintiffs' property continually and regularly from at least 1991 through the present. No evidence regarding the ownership of the property between 1991 and 1994 has been provided by either party. In 1994, Ms. Jones purchased the property. According to plaintiff Katy Corbett, Ms. Jones continued to own the property from 1994 until January 2018, when she sold the property to the plaintiffs. (ECF 10-1 at ¶ 2.) The defendant does not dispute this fact. Based on their own declaration, the plaintiffs had no interest in the property until January 2018, long after the record reflects the Corps began using the right-of-way.

Because the taking had occurred by 1991, and the plaintiffs held no interest in the property until 2018, they lack standing to assert a claim for the original taking. *Wyatt*, 271 F.3d at 1096 ("It is axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation.").

### B. *Timeliness*

Under the Tucker Act, monetary claims against the United States must be brought within six years from the date the claim accrued. 28 U.S.C. § 2501. In the context of a taking, a claim accrues when "the scope of what is taken is fixed . . . and the plaintiff knew or should have known of the acts that fixed the government's alleged liability." *Katzin*, 908 F.3d at 1358; *see also Petro-Hunt, LLC v. United States*, 862 F.3d 1370, 1378 (Fed. Cir. 2017), *cert. denied*, 584 U.S. 977 (2018).

The plaintiffs should have known about the Corps' usage of its right-of-way across their property because the Corps has openly and continuously used the access path since 1991. The plaintiffs' assert that Ms. Jones, the property owner from 1994 to 2018, did not inform them of the Corps' use of the right-of-way across the property when she sold the property to them. (ECF 10-1 at ¶ 10.) The plaintiffs suggest that Ms. Jones may not have been aware of the use of the access path by Corps personnel because she was largely an absentee owner. (*Id*.)

The law does not require a property owner to have actual knowledge of the government's use of a right-of-way before a taking accrues. Instead, a taking accrues when a property owner should have known of the government's use of the property. *See Katzin*, 908 F.3d at 1358 ("a physical takings claim accrues when . . . the plaintiff knew or should have known of the acts that fixed the government's alleged liability"); *FloorPro, Inc. v. United States*, 680 F.3d 1377, 1381 (Fed. Cir. 2012) (citing *Fallini v. United States*, 56 F.3d 1378, 1380 (Fed. Cir. 1995), *cert. denied*, 517 U.S. 1243 (1996)).

The Corps openly used the access path over many years during the ownership of the property by both Ms. Jones and the preceding owner. Corps personnel traversed the access path on foot and by vehicle during Ms. Jones' entire tenure as owner. Starting in 2007, while Ms. Jones owned and visited the property, the Corps had the trailer and pickup truck placed at the entrance to the access path on the property to deter trespassers. This open and notorious use by the Corps over many years provided Ms. Jones, or any reasonable landowner, with more than sufficient notice of the Corps' use of the access path as a right-of-way to get to the Ft. Gibson Lake property throughout her ownership of the property.

Even if Ms. Jones could not be reasonably charged with knowledge of the Corps' use of the right-of-way, such that the plaintiffs could claim they were unaware of that use when they purchased the property, the plaintiffs themselves received actual notice of the Corps' use of the right-of-way over the access path in June 2018, when the Corps sent them the cease-and-desist letter. The letter expressly informed the plaintiffs that they "have no legal authority to block this road either from public access or from Corps access," and warned the plaintiffs that "the Corps is prepared to pursue available legal remedies to ensure this road remains open for both Corps access for project purposes and public access to the public hunting grounds." (Ex. 9, ECF 10-1.) Giving the plaintiffs the benefit of all inferences to be drawn from the record, the latest they received notice of the taking was June 2018. Even if one were to ignore the Corps' use of the access path since at least 1991, the plaintiffs became aware in June 2018 of all the facts necessary to know that the Corps was using the access path as a right-of way. Nonetheless, they waited until March 2025, seven years later, to sue, and the complaint thus falls outside the six-year statute of limitations.

The plaintiffs' brief may also be read to suggest that the taking did not accrue until 2020 (ECF 10 at 7-8), when the Corps started sending letters to private individuals authorizing their use of the access path to get to the Ft. Gibson Lake property. First, this argument is not founded on an allegation in the complaint and is therefore not properly presented but is instead forfeited. Even if it could be considered, it would fail.

Property interests are defined by state law. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Oklahoma case law suggests that the expansion of an easement beyond its original scope and purpose may constitute a new easement and, hence, a new taking. *See Ponca City v. Drummond*, 221 P. 466 (Okla. 1923). Even if they had presented the argument and the argument were correct as a matter of state law, it is not viable. Although the record does not reflect that the Corps issued letters authorizing public use of the right-of-way until 2020, the cease-and-desist letter the Corps sent the plaintiffs in June 2018 expressly informed the plaintiffs that the right-of-way was open to use by members of the public. The plaintiffs were therefore aware in June 2018 that the right-of-way was open to both Corps personnel and members of the public. Any claim for a taking predicated on the expanded use of the right-of-way to include members of the public would thus also be untimely. Accordingly, any amendment to the complaint to raise such a claim would be futile.

V.     **CONCLUSION**

While a taking by the Corps did occur, the plaintiffs' claim is defective because they did not have a property interest at the time of the taking and therefore lack standing to challenge the taking. Additionally, the plaintiffs failed to bring their claim within the six-year statute of limitations. Finally, even if the plaintiffs were allowed to amend their complaint to allege that under Oklahoma law the existence of a new taking occurred when the Corps expanded its original right-of-way for public use, the plaintiffs had been informed of that expansion in June 2018, more than six years before they filed suit. Thus, such a claim would still be time-barred, and any amendment to the complaint would be futile.

The motion to dismiss under RCFC 12(b)(1) is granted.  A separate order filed concurrently with this opinion will direct the Clerk to enter judgment.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**
